Good morning, Your Honor. May it please the court, Roger Cole of Femlecon West on behalf of defendant and appellate Intuit, Inc. With the court's permission I would like to reserve three minutes for rebuttal. Yes, Your Honor. Online commerce is ubiquitous and that trend is only going to increase. Buyers and sellers of commerce on the internet need to understand under which terms and conditions they are going to conduct commerce. We all know and many courts have not all users read the terms and conditions that are posted on websites. In that circumstance the question is whether the website presents its terms in a manner to provide reasonable notice to the reasonably prudent internet user that they are being bound to an agreement even if they choose not to read those terms. Here Intuit did exactly that when it presented its terms to the three plaintiffs. Number one, its sign-in button and links to its terms were visible. The website is not cluttered. The website is designed in no way obscures the links. Number two, the hyperlink to the terms is right below and centered on the sign-in button that a user is required to click. Number three, the sentence below the sign-in button includes contract forming language that matches the call to action. That is, the button to sign in, the contract forming language says by clicking sign in you read to the terms. And number four, the hyperlinks are clear and available to the user when they click sign in. They are blue. It is the only blue font on the page. It's contrasted with the gray on the rest of the page. Excuse me, what is the difference? I'm looking at the ER 137 screen grab, I guess you call it, where it says right in that language you're referring to by clicking sign in you agree to the one turbo terms of use and then comma turbo tax terms of use. What's the distinction? I mean, as a user, what is what is the one versus the other? Your Honor, Intuit offers two different products. The turbo product is a credit monitoring product. The turbo tax product is an online tax preparation and filing product. Okay, thank you. We're in sort of an odd situation in which what everything you're saying sounds very factual, but I understand that we're reviewing the district court's determination, we know about this. So the question of contract formation, we're asking whether as a of that screen was enough to put a prudent person on inquiry notice. Is that what we're here to review? That's correct, Your Honor. It's a de novo standard and the question is exactly as Your Honor said. It's an objective question as to whether or not a reasonably prudent internet user would be on reasonable notice that they are being bound by the terms. And there are no material disputed fact here. The screens are what the screens say. There are two colors on the screens. The hyperlinks in blue, the sign-in button is there, the contract forming language is there. And these are the same facts that the DeWin court, DeWin v. Barnes & Noble considered in the Ninth Circuit and the Long Court, which is a California Court of Appeals applying California law, reviewed and applied in reviewing whether or not there was assent here. And every circuit that has reviewed the question of whether or not the assent issue is de novo or another standard when reviewing online contracts has found that the standard is de novo. Tulane v. Uber in the First Circuit, Meyer v. Uber in the Second Circuit, St. Norris v. TransUnion in the Seventh Circuit. And in all of those cases, the appellees urged the same argument that the appellees urged here, which is it's a factual issue and that the court should apply a clear error standard. And in all of those cases, the Court of Appeals rejected that argument and reviewed this issue de novo. Can I follow up on that point? This is an issue of California law that we're deciding today, right? Yes, Your Honor. What's your best California case? Long, Your Honor. But Long is a case, Long, you distinguish Long. Yes. Long doesn't tell us what would be needed, Long tells us what's insufficient. Is there any California case that tells us what would be sufficient? Unfortunately, there is not, Your Honor. Should we certify this? Should we certify this to the California Supreme Court? Seems like a pretty important issue. Why shouldn't we let them decide it? That is certainly one option. I don't think that that's necessary here, Your Honor, because the Ninth Circuit in Nguyen and then last month in Ticketmaster v. Lee applied California law and found, in the Ticketmaster case, found a nearly identical sign-in screen to be an enforceable contract. But it is an unpublished opinion. That's correct. It is unpublished, Your Honor. But Ticketmaster did cite extensively from Nguyen and the parts of Nguyen that Ticketmaster cited from and quoted from in the Nguyen opinion, the Nguyen court specifically referenced as an example of an enforceable agreement, the agreement at issue in Fantasia v. Facebook, which was a Southern District of New York 2012 case that applied California law. And in that, that was an example that the New York, the Ninth Circuit found was enforceable. And this is what the Ninth Circuit had to say about that case in the Paret. Enforcing forum selection clause in websites terms of service, where notice below the sign up button stated by clicking sign up, you are indicating that you have read and agreed to the terms of service and user click sign up. That is, those are exactly the facts that we have here, Your Honor. One of my concerns, I guess, and the reason it seems odd that this isn't a fad question though, I take your point that we've said it was de novo, is that we're looking at one collection of layout, user interface layout, but there could be, they could be changed, there could be many, many different combinations. So for example, the district judge here was concerned about it, although it was in blue, it wasn't underlined. And so the next one could be in red. And does that make a difference? So I'm wondering whether there is any basis to discern some sort of rule that would make it sensible to certify the question when the facts on the ground seem to be changing. Your Honor, that is exactly why we canvassed all of the online assent cases and presented them in our opening brief on pages 16 to 18, and we included cases that both found assent and did not find assent. And based on the canvassing of the law, we think that there are four factors that a court should consider in determining whether or not a user has agreed to online terms, even if they do not read them. And they are that the terms are visible to the user, the terms or hyperlinks are proximate to the button or the call to action, that there is explicit contract forming language, and if the terms are incorporated, the hyperlink is clear and available to the user at the time of the sign-up. And into its website and issue here, Your Honor, that's before the court today meets all of those factors. And one more additional point that was important to the ticket master case. Every single time a user clicks sign in on into its website, it is reaffirming their agreement to these terms. And we know that these plaintiffs who have been customers since tax year 2015, in 2019 alone, one clicked it twice, one clicked it three times, and another clicked it six times. And I'm sorry, go to the next slide, please. Yes, Your Honor. The agreement in the terms of the agreement are in the papers, in the briefs. In all caps, the first sentence of the arbitration provision says that parties agree that any dispute will be decided by an arbitrator, not court. There is then a carve-out that says, notwithstanding, the parties may go to court for equitable or injunctive relief. The parties have a disagreement as to what that means. We believe that it can only mean that the parties can seek injunctive or equitable relief from a court in aid of the arbitration, or if the party, if the arbitrator, if they need relief that they need to go to court. And there are three reasons for that, Your Honor. Number one, that's the only way to consistently read the agreement. The agreement, the clause, the carve-out says that it is limited to, quote, parties to the arbitration. So only a party to the arbitration can go to court. And it would be nonsensical to have a first sentence in all caps that says any dispute is resolved by an arbitrator, not the court, and then to have a carve-out that would essentially eviscerate that and give the court the ability to have equitable and injunctive relief. Well, I'm not so sure. Let me offer an alternative explanation. Let's assume that you're right and this is an arbitral dispute. So the arbitration is started and the plaintiffs in that arbitration want equitable relief. They can't get it from the arbitrators, can they? Yes, Your Honor, they can. And Comedy and Ferguson both make that, Comedy Club and Ferguson both make that clear. They can get an injunction from the arbitrators? Yes, Your Honor. And Comedy Club... Well, they can get a recommendation of an injunction and then they have to go to court to get it enforceable, right? You're correct, Your Honor. And then in the Ferguson case, the Ferguson court said that everything should go to arbitration and the arbitrator should be able to make a decision that is in violation of the UCL or the False Advertising Act. And if the arbitrator then decides that it does not have the authority to grant an injunction, the plaintiff could come back to the court after the arbitrator made those findings and seek an injunction from the court. And that's exactly what we're saying here is that this provision should be interpreted to be an aid of the arbitration or if the plaintiffs are seeking something that an arbitrator cannot award. Okay, but I understand that interpretation. But my question is, why isn't the district court's order consistent with the notion that I'll retain my ability to grant equitable relief? I don't think there should be an arbitration in this case. But if somebody tells me I'm wrong, I still retain that ability after the parties go to the arbitrators. In other words, do we have to overturn that order? Yes, yes, we do, Your Honor. And the reason is that if there is any ambiguity as to whether or not the equitable claims go to the arbitrator or the court, the claims must go to the arbitrator. And the Supreme Court made that clear in Moses H. Poong. It said the Arbitration Act establishes that as a matter of federal law, any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration. And so if there's any doubt about whether or not these claims should be resolved by the arbitrator or by the court, they must be resolved in arbitration. So your view is the merits go to the arbitrator, but you may have to go to court to get the remedy. That's an open question, Your Honor. Comedy Club affirmed an arbitrator's award of equitable and injunctive relief. And then Ferguson left open the question of whether or not the arbitrator could award equitable relief or whether or not the plaintiff would have to come back to court for equitable relief. You want to say the rest of your time? Yes, please, Your Honor. Thank you very much. We'll hear from the other side. Thank you. Good morning. May it please the court. Norman Siegel for the Plaintiff's Appellees. This is a really a simple case based on established law in California and this circuit. And the record below here included three unique elements that support the district court's conclusion that into its terms were not reasonably conspicuous. And therefore, it cannot serve to establish constructive notice of the terms as a basis to compel arbitration. And the first uncontested and unrebutted point here in the district court is the expert opinion of Dr. Harry Bruggem. If we're reviewing de novo, if this is just a legal matter, not a factual matter, why would we consider an expert's opinion? We are, Your Honor, we mentioned U.S. Bank in our papers because we don't think it's foregone conclusion here that this is a de novo review. This is a mixed question of law and fact, as was the case in U.S. Bank that took up the question of what's arm's length and determined that was mostly factual and therefore deferential to the trial court. Here, we're trying to figure out conspicuousness. So is there any case, is there any case anywhere that's treated this conspicuousness issue as a question of fact rather than subject to de novo review? No, Your Honor, not in the post-U.S. Bank 2018 world, that's right. If you were in California State Court, they would treat it as de novo review, would they not? I think that's correct, Your Honor. See, so when you're saying that this is, your case is made by established law, what's your best case? I'm trying to find a case that finds an agreement like this not enforceable. Sure, well, it's the lessons of when and long, and then as those cases have been applied in numerous district court cases that we've cited, Juul, Redbox, Lyft, but it's really the lessons of those three cases if you take... Right, so to be fair, I just want to make sure, I've been looking for cases too, like everybody else has. There isn't a case close to this set of facts, is there, where a court has found it not enforceable? Oh, several, Your Honor. Juul is one recently in this... No, I mean an appellate decision, I'm sorry. That's right, that's right. But you cannot square a finding that this is enforceable with the appellate decisions, Judge Hurwitz, because what is required is conspicuousness, and what the courts have repeatedly said, both this circuit and then back to Long in the California Court of Appeals, is that you must have a conspicuous, not only these terms and conditions, but language that indicates that by clicking a button, you are committing yourself to disagreement, and that's what's completely absent here, and that's why Dr. Rignell's opinion, which again is in the record and uncontested. Excuse me, one minute. Doesn't the language say by clicking sign in, you agree to terms of use? One moment, Judge, I'm sorry. Oh, I was just looking at the language, I'm sorry. I was looking at the language on the sign-in sheet, and it says by clicking sign in, you agree to the terms of use. It does appear to be contract formation language. Right, and it's contract formation language that is inconspicuous, and this is the point of not only the lower court's opinion, but Dr. Rignell. The one thing you're looking at is that it's not sufficiently conspicuous to put a reasonable person, a reasonably proven person, on inquiry notice. That's exactly right, and that's what these cases say. If you read Long and Winn together, they say it must be conspicuous. If you look at the very cases that Intuit cites here, in fact, their entire request for judicial notice- We disagree with you about conspicuousness. If we think it's sufficiently conspicuous for a reasonable person, then you lose? If you think it is conspicuous to a reasonable person, we would lose on the first point, and we would ask the court for amand on the second. But I just want to be clear that there really is no basis based on the combination of Winn and Long and this court's recent decision in Huge to make that finding. The contracting language that your honor pointed to that says by clicking is below this very big blue sign-in button, as Dr. Brignull pointed out, who's an expert in how these websites are designed to prompt user use, it is specifically set up to make those key terms inconspicuous by not even putting that language, that binding language, before the button in nearly every single case. Getting back to my original question, which was assuming that we think we're bound by our precedent and California precedent that our review is de novo, is the expert's opinion irrelevant in that case? Well, we don't think so. We think it supports the facts. It is evidence just like in any case that, again, was uncontested. But let me talk about this actual evidence against the cases out there that we've all talked about, and as Judge Hurwitz said, the numerous cases out there. And maybe just using the judicial notice request from Intuit and the cases cited in footnote 11 of its brief as a guide, nearly every single one, save for two or three, has those binding terms above the action button. And that's the real problem here. That's what Winn and Long... Is that true in Meyer? I mean, I know it's a Second Circuit case, and we try not to pay attention to the other a disclosure considerably less conspicuous than this one. And the unanimous Second Circuit, applying California law, finds that it's conspicuous enough. And we don't think it is more conspicuous. And this is really the second factual point I wanted to raise, and a point Judge Tagle made. What we separately think is dispositive here is what I can only characterize as these confounding hyperlinks. Okay, so you have in the very faintest of fonts below the button, the binding language that is nearly imperceptible. But to make matters worse, you have this combination of these links that say turbo terms of use, turbo tax terms of use. And Intuit concedes that that first link, turbo terms of use, has nothing to do with this case, has nothing to do with the goods or services that are at issue in this case. It has nothing to do with the arbitration clause that Intuit seeks to enforce through these terms. It is a completely immaterial hyperlink with nearly identical language separated by this imperceptible comma. And again, we think is dispositive against Intuit because it works against the holding and win, talked about in long, reinforced in huge, that users should not be obligated to ferret out confusing hyperlinks. It's hard to imagine more confusing hyperlinks than two nearly identical terms presented, one of which has nothing to do with this case, the other which, if you're lucky enough to have made your way past the sign-in button, read the terms that said you are committed to reading the attachments that you would manage to click the right button. That can't be the conspicuous textual notice that win and long and huge talk about. And it also removes from the analysis the argument, Judge Hurwitz, that mere proximity and conspicuousness does the trick. That was expressly rejected in numerous cases. Amazon and this court in win and huge, you need more than that. And what you need is this conspicuous textual notice. And of course, you have to read, you have to look at the website as a whole. And here, we have this big blue button. You have the contracting text below the button. And then these truly confounding hyperlinks below that, we think it just simply doesn't meet what is a well-established standard in this court and under California law. So with this, let me ask you a question. Let's assume this was a TurboTax sign-in page rather than an Intuit sign-in page. And it only said, by clicking, you agree to the TurboTax terms of service. Would that be different? It would be modestly different. I take it in your view, not enough. Not enough. Again, we have what was accepted by the court as evidence, uncontested, that we think this court can consider a fact. And that fact is the design of this website was designed to be inconspicuous. It is an uncontested fact in the record. Nobody has contested it. The defendant did not seek to take the deposition of our expert. And the reason we retained an expert in this case is because we've read all these cases. We understand what the standard is here is conspicuousness. And how do businesses, including big businesses like Intuit, who know how to design a website to direct traffic, well, what design choices did they make here to drive traffic? And what's in evidence, uncontested, is that it was specifically designed to be inconspicuous, to prompt people to click on the sign-in button before getting to the terms and conditions. So let me ask you another case. Let's assume this was a click-wrap agreement. You actually had to go to the bottom and check a box. I'm sorry. Judge Ikuti, go ahead. And then I'll ask. I would like to ask about, to address before you run out of time, whether the district court erred in not staying the equitable claim. So what's your response to our Language and Comedy Club saying that that language only allows a court to maintain a status quo between the parties? Sure. Judge Ikuti, in my colleague's recitation of the provision at issue, he left out one important part. What's unlike Comedy Club, that is in this case, is language that says, notwithstanding anything to the contrary, either party may pursue injunctive or other equitable relief in court at any time. Does any party to the arbitration, right? You seem to have lost attitude also. I'm not sure I heard your question, Judge. I'm sorry. The language says, any party to the arbitration. That's right. Sorry. That's exactly right. And so there's a couple of concepts there. One is, do you have to be a party to the arbitration? The court accepted that that was a possibility. He said, if you look at the last page related to the stay, his conclusion was, assuming without the deciding that we would need to go to arbitration, initiated arbitration, he was maintaining jurisdiction for purposes of the equitable and injunctive relief component. So we don't think there's anything for the court to do, regardless of how it decides the first issue. We, of course, hope the court affirms. But we think the appropriate path is remand. Again, language different than Comedy Club, because there's this key phrase. And it also does not have a key phrase that is implied and into its argument repeatedly, which is the concept of innate of jurisdiction. It's not there, and therefore should not apply. I see Mr. Cole has dropped off. Should I pause here, Your Honors? Let's pause and see if he can get back. He may just have dropped off the screen. He may be able to hear us. Is our technical person, Sam, are you there? Yes, I'm here, judges. It looks like he did actually disconnect from the call. I can attempt to contact him if he doesn't appear in a minute. Yes, please. Sam or Erica, have either of you been able to contact Voting Council? Yes, Judge. We're actually on the phone with him right now. And I believe he is almost back into the call. Here he is now. I apologize, Your Honors. I'm not sure what happened there. It's a mystery of the Zoom forum. Yes, it's a new world for us all. I sincerely apologize. Okay, Mr. Ziegel. Thank you. So just to put a final conclusory point on Judge Akuda, your question, I think I remember where I left off. First off, the issue is only considered as it related to the stay. This court obviously stated. But importantly, in both the first paragraph of the opinion and the last paragraph of the opinion, he said he didn't decide it. So it would be inappropriate for this court to decide it, even if... So is your impression, and that's why I was asking the question to opposing counsel, is your impression that if we were to... Look, if we sustain the decision below, then the arbitration issue becomes irrelevant. If we were to reverse it, I think the way I read Judge Breyer's decision is, I'd go back and look at this again. Is that a wrong reading of it? I think it's fair to say he's going to look at it again. We had a motion we wanted to be heard immediately. That didn't happen. The reality is that motion is going to be modified. We also have new information related to waiver, related to the arbitration clause we would likely raise, including, not in the record, but facts that Intuit has gone off and sued people who have initiated arbitration. So there's a whole record that has been developed since the initiation of Judge Breyer's order saying he wasn't taking this on directly. Before you run out of time, is it your view that this type of agreement, it's not a click-wrap, it's not a browse-wrap, it's something in between, a sign-in wrap, can ever be enforceable? Your Honor, it is a browse-wrap. The defining characteristic of a browse-wrap, if you'll allow me, Your Honor, is the idea that you can click the button, you can take the action without expressly agreeing to the terms. Maybe we're fighting about definitions. A click-wrap is one where you say, I agree, on the front page. Well, a click-wrap is one where we've all seen them in our iPhones, for example, where you have to read the terms and conditions and click I agree. And then agree. So my question is, in your view, is that the minimum that's required? Or can something where you don't have the terms on the front page and agree nonetheless be sufficiently conspicuous? I think under this court's precedent and long, you may be able to have something less. And let me give you a couple of examples because they're in the cases into its sites. I just wanted to figure out whether your position was what I would call click-wrap or nothing. You had an express box that says, or the button says, as some of the cases like Major League Baseball on page 228 of the supplement, the button was labeled buy and accept terms. The AT&T agreement on page 372 has a box that says, I've read and agree to the AT&T terms of service that you have to click before you create the member ID. So if you had two boxes, one that says, I hereby agree to the terms and conditions that are appropriately linked, not here, but if they were. And then a second box that allowed you to sign in or purchase. That may do it without having to read the terms and conditions. But we're a long way from there. Under the law of California in this court, I see I'm well past my time. I would just ask the court to affirm Judge Breyer's opinion. Thank you. Mr. Cole, you have some time to rebuttal. Yes, thank you, Your Honor. And again, I apologize for the connection issue there. So I'd like to start where Mr. Siegel and Judge Hurwitz just ended. The two appellate courts that have decided, court of appeals that have decided this issue on a stent that are closest to end to a situation are the Meyer versus Uber case in the Second Circuit and the recent decision of Ticketmaster from a panel of your colleagues. And also, Nguyen affirmatively accepts, as an example of an enforceable agreement, the FEDA versus Facebook, which is also very similar to this. Several points to rebut, Mr. Siegel. First, about this expert declaration. The expert declaration does not create any disputed material facts. The question for this court is whether, under objective tests, a reasonably prudent internet user has reasonable notice that he or she is going to be bound by an agreement, even if they do not read the terms. And Intuit's presentation of its terms does that. And that's what Meyer versus Uber and the Ticketmaster case say. Second, Mr. Siegel addresses the multiple links question. And Judge Hurwitz, you hit on something important. The website is the one Intuit website. It is an Intuit website sign-in. It is not just a TurboTax sign-in. Intuit offers two products. One is called Turbo. One is called TurboTax. Presumably, the customer knows which product they're going to use and click the appropriate terms. Really? Really? You think the consumer knows when he's just signing into the website for the first time the difference between Turbo and TurboTax? Your Honor, the user, if they're using the TurboTax tax product, would certainly know that compared to the Turbo credit monitoring product. And it's not just the first time, Your Honor. Intuit requires the user to reaffirm his or her acceptance of the agreement every single time that they sign into the agreement. And in the Ticketmaster case, the Ticketmaster court approved a website that was similar where there were three links, much like presented in Intuit's. And the DoorDash case, which we discussed on page 18 of our reply brief, did the same. So in my final... What about the fact that Intuit, again, on ER 137, that screenshot, it says in the very top, Intuit, but it's got TurboTax and QuickBooks and Mint. Are you saying that those all come under the umbrella of TurboTax? Or what is that all about? Yeah, those are all Intuit products, Your Honor. So QuickBooks is a financial accounting product for small businesses. Mint is an accounting product for individuals. And TurboTax is their tax service filing product. Those are Intuit's three biggest products. So Turbo is not listed up there. It is not, Your Honor. And QuickBooks and Mint are not listed by clicking sign in you agree to. So there's like... That's correct, Your Honor. And the reason for that, and this is in ER 159, on that particular screen, it's plaintiff Brower who logged in there. And Brower logged into a website called myturbotax.intuit.com. And that's the reason why those two particular links were shown there. If he had gone to Intuit, there may have been different links. But that's the reason that those two products are listed there. And again, no court that I'm aware of has held that a party cannot incorporate multiple agreements by reference through Hyperlinks. Has any court ever held that you can? Courts have not discussed this issue, Your Honor. Yeah, I mean, so when you say no courts held this, what you really mean is no courts ever addressed it? That's fair. Yes, Your Honor. But courts, many courts, as we cite in our footnote in the reply brief, have enforced terms of service that do have multiple Hyperlinks, and concerns were not raised by the court in those cases. Okay, you're over your time. Oh, I think we have the parties' arguments. The case of Andrew Dorman versus Intuit Inc is submitted. And we're adjourned for this session of the week. Thank you. Thank you very much, Your Honor.
judges: Ikuta, Hurwitz, Tagle